## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* WADE RINER,<br><br>                              Plaintiff,<br><br>v.<br><br>HUNTERS RUN PROPERTY OWNERS ASSOCIATION, INC., *et al.*,<br><br>                              Defendants. | Case No.: 1:22-cv-23342-MD |

### DEFENDANTS' JOINT MOTION TO DISMISS THE COMPLAINT [DE 1][1]

"The purpose of the FCA is to encourage private citizens who are aware of fraud against the government to expose the fraud, while preventing opportunistic suits by individuals who hear of fraud publicly but play no part in exposing it." *U.S. ex rel. Matheny v. Medco Health Sols., Inc.*, 671 F.3d 1217, 1222 (11th Cir. 2012).

Wade Riner (**Riner**) is the prototypical "opportunistic" relator bringing a suit based on allegations that are derived exclusively from information contained in the public record. *Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 294 (2010). He has filed at least three substantially identical FCA complaints alleging that seventy-nine defendants— country clubs, condominium associations and homeowners associations located throughout Florida and Colorado—were ineligible for benefits under the Paycheck Protection Program (**PPP**), enacted by Congress in response to the COVID-19 crisis.[2]

---

[1] Pursuant to this Court's direction [DE 132, 135], the defendants listed on Exhibit A jointly submit this motion.

[2] In addition to this action, in which Riner named 43 defendants, Riner has at least two related, pending lawsuits making the same FCA claims of PPP ineligibility: *U.S. ex rel. Riner v. Watercolor Cmty. Ass'n, Inc., et al.*, Case No. 3:22-cv-11072-TKW-ZCB (N.D. Fla. 2022) (11 defendants), and *U.S. ex rel. Riner v. Beaver Run Homeowners Ass'n*, Case No. 1:22-cv-02071 (D. Co 2022.) (25 defendants). Upon information and belief, Riner has filed similar complaints in other federal courts that have not yet been unsealed. *See* Jeff McDonald, *Rancho Santa Fe homeowners group illegally collected $1.5M in COVID-19 relief*, THE SAN DIEGO UNION-TRIBUNE (Dec. 1, 2023, 11:36 AM),   https://www.sandiegouniontribune.com/news/watchdog/story/2023-12-01/rancho-

Riner's complaints do not allege the hallmarks of a typical PPP fraud claim—e.g., specific misrepresentations concerning the number of people the applicant employs, the amount of the applicant's regular payroll, or the applicant's actual use of the loan funds that were received for permissible purposes. Instead, Riner's FCA claims are based exclusively on his conclusory assertion that the defendants were ineligible to receive PPP benefits as "various not-for-profit entities" with sufficient financial resources at their disposal such that they could not certify that economic uncertainty made their respective PPP loan applications necessary. As explained below, there are several fatal issues with the legal theories and allegations supporting Riner's FCA claims that warrant dismissal of the Complaint.

*First*, the Complaint is barred by the FCA's public disclosure bar (31 U.S.C. § 3730(e)(4)(A)–(B)) because the claims are based exclusively on publicly available information concerning the PPP loans that each defendant received. The Complaint makes clear that Riner has no connection to nearly all of the defendants that he named in this action and has no specific "insider" knowledge concerning their organizational structures and finances. Riner is not an "original source" of the fact that the defendants applied for and received PPP loans, the amounts of the loans that they received, or the fact that those loans were forgiven. All of that information was maintained by the Small Business Administration (**SBA**) and made available to the public by official government resources before being republished by various news outlets. Moreover, local news media in South Florida publicly raised questions concerning the eligibility of condominium associations and homeowners associations such as the defendants—including the one association to which Riner alleges he belongs and several other defendants that Riner named in this action— more than two years before Riner sought to cash in by filing his own *qui tam* Complaint.

*Second*, Riner's conclusory allegations fail to state a plausible claim with the requisite particularity against any of the defendants. At the outset, Riner fails to identify a single individual from any of the defendants' organizations who made the allegedly false statements that form the basis of the FCA claims. Without alleging the "who," Riner necessarily also fails to allege the "what, "where," when," and "how" of the alleged false statements that each defendant allegedly submitted to the government, all of which are required to satisfy the heightened pleading standard that applies to FCA claims under Rule 9(b). Riner instead opts for a universal applicability

santa-fe-homeowners-group-wrongly-collected-1-5m-in-covid-19-relief-now-agrees-to-repay-funds.

approach, contending that all 43 defendants are identically situated and submitted identical forms containing identical certifications. However, the official SBA forms on which Riner relies, per the SBA's own instructions, did not apply to a vast majority of the defendants.

*Third*, and indicative of Riner's shotgun pleading, with respect to the 38 defendants in this action who received PPP loans under $2 million, Riner's allegations that they falsely certified their economic uncertainty when they applied for their loans are barred as a matter of law by SBA guidance providing that the required certification is automatically deemed to have been made in good faith for loans of that size. As to the remaining defendants, Riner fails to allege the individual economic situations that prevented those defendants from making the economic uncertainty certification.

At bottom, the number of defendants that Riner sued, and the dearth of specific allegations relating to each defendant that he named, underscore two insurmountable obstacles for purposes of this Motion to Dismiss: (1) his allegations are based entirely on information published on government and news media websites, which supply all of the detail concerning each defendant's (and every other PPP borrower's) PPP loan that form the basis of the FCA claims alleged in the Complaint and raised the specter of ineligibility more than two years before Riner filed his *qui tam* Complaint in this action; and, (2) as a stranger to nearly all  named defendants, Riner has not pleaded, and indeed cannot, plead the elements of an FCA claim with the required particularity.

## THE PAYCHECK PROTECTION PROGRAM

In March 2020, Congress enacted the "Coronavirus Aid, Relief, and Economic Security Act" (**CARES Act**).[3] The CARES Act was a response to the COVID-19-related economic shutdown. Additional legislation followed. Congress enacted the "Economic Aid to Hard-Hit Small Businesses, Nonprofits and Venues Act" on December 27, 2020, and the "American Rescue Plan Act" on March 11, 2021.[4] One district court explained the intent of the Paycheck Protection Program as follows:

> [T]he policy choices made by Congress when it enacted both the first and second round PPPs are entirely rational…The first draw program was enacted as part of an urgent legislative attempt to cope with the devastating, unprecedented, and rapid

---

[3] Pub. L. No. 116-136, 134 Stat. 281 (2020); 15 U.S.C. § 636(a)(36).
[4] Pub. L. 116-260, 134 Stat. 1993 (the Economic Aid Act); Pub. L. No. 117-2, 135 Stat. 4 (American Rescue Plan).

economic decline that occurred when states around the nation slammed the brakes on normal economic output by drastically curtailing in-person work and personal movement for non-essential purposes… It was both consistent and entirely economically and politically rational for Congress to believe, first, that the broadest possible allowance of credit was called for in the opening weeks and months of the pandemic crisis, in order to keep as many citizens gainfully employed as possible.

*Nat'l Ass'n of Home Builders v. U.S. Small Bus. Admin.*, No. 20-11780, 2021 WL 4458660, at *11 (E.D. Mich. Sept. 28, 2021) (holding CARES Act preempted SBA ineligibility rules), *rev'd on grounds of mootness*, 2023 WL 192239 (6th Cir. 2023); *see also DV Diamond Club of Flint, LLC v. U.S. Small Bus. Admin.*, 459 F. Supp. 3d 943, 957—58 (E.D. Mich. May 11, 2020), *aff'd* 960 F.3d 743, 746 (6th Cir. 2020) (same).[5]

Congress intended to help businesses maintain employment by funding payrolls. To that end, the CARES Act expanded the eligibility for SBA loans by the "broadest possible allowance." *Id*. Title I of the CARES Act is titled the *Keeping American Workers Paid and Employed Act* and the substantive provision speaks directly to "increased eligibility" as follows:

> (D) INCREASED ELIGIBILITY FOR CERTAIN SMALL BUSINESSES AND ORGANIZATIONS.— "(i) IN GENERAL.—During the covered period, **in addition to small business concerns, any business concern**, **nonprofit organization**, veterans organization, or Tribal business concern described in section 31(b)(2)(C) shall be eligible to receive a covered loan if the business concern, nonprofit organization, veterans organization, or Tribal business concern employs not more than the greater of . . . (I) 500 employees . . . .

Pub. L. No. 116-136; 134 Stat. 281, 288; 15 U.S.C. § 636(a)(36) (emphasis added). The CARES Act does not define the phrase "any business concern" to which the act extends eligibility. Examining the CARES Act, one court explained that the word "any" carries "an expansive meaning . . . and implies *every* member of the class or group."[6]

---

[5] "In response to the COVID-19 outbreak, Congress authorized historic levels of emergency funding for federal agencies to provide relief to individuals, businesses, state and local governments, and public services." Pandemic Response Accountability Committee, *Semiannual Report To Congress* (April 1, 2020 – September 30, 2020).

[6] *National Ass'n of Home Builders*, 2021 WL 4458660, at *10 (emphasis in original).

## FACTUAL BACKGROUND

The relevant facts are drawn from the well-pleaded factual allegations of the Complaint, taken as true, and from publicly available government documents and news reports, the authenticity of which is not in dispute.[7]

### A. Government Reports & News Media

Through the CARES Act, Congress established the Pandemic Response Accountability Committee (**PRAC**) and tasked it with creating a public-facing website.[8] In its first report to Congress, PRAC explained its first goal was to foster greater transparency on PPP funds usage by providing a "robust, publicly-accessible website" that makes available "to the public details on the $2.6 trillion coronavirus relief funds, providing details on who received the funding, how much they received, and how programs and industries are spending the money."[9]

The website (<pandemicoversight.gov>), which is regularly updated, provides detailed information on each recipient of PPP funds, including the "loan amount," the "amount forgiven," and the "lender name." In fact, this data has been available since at least December 1, 2020, when the SBA "publicly produced the full dataset containing the names, addresses, and precise loan amounts for millions of recipients of PPP…loans totaling hundreds of billions of dollars" in response to Freedom of Information Act (**FOIA**) requests from various news organizations. *WP Co. LLC v. U.S. Small Bus. Admin.*, 514 F. Supp. 3d 267, 270 (D.D.C. 2021).

Many news organizations re-published the same government data on their own websites, for example: Gannett -- The Ledger (Lakeland Florida),[10] the Northwest Florida Daily News,[11] NBC Miami,[12] CNN,[13] and ProPublica.[14]

---

[7] Concurrently with this motion, Defendants are filing a motion requesting judicial notice of government and news reports relevant to the public disclosure bar and the official SBA forms referenced in this motion.

[8] 134 Stat. 496,533-334, 539-540 (formation of PRAC).

[9] Pandemic Response Accountability Committee, *Semiannual Report To Congress*, pg. 5 (April 1, 2020 – September 30, 2020).

[10] <https://data.theledger.com/paycheck-protection-program-loans/>

[11] <https://www.nwfdailynews.com/story/news/2020/07/08/florida-ppp-loan-recipients-see-full-searchable-list-of-who-received-them/112604846/>

[12] <https://www.nbcmiami.com/news/local/south-florida-small-businesses-pandemic-relief/2336990/>

[13] <https://www.cnn.com/projects/ppp-business-loans/states/fl>

[14] <https://projects.propublica.org/coronavirus/bailouts/>

For example, a search for Defendant "Anchorage Resort and Yacht Club Condominium Association, Inc." (**Anchorage**) on ProPublica's public database returns results for Anchorage's two PPP loans. The screenshot below depicts the publicly available information for Anchorage's First Round PPP loan:

ProPublica's disclosure indicates that, amongst other information, Anchorage is a non-profit organization that obtained a First Round PPP loan of $104,120, the date of approval, the loan's forgiveness status, and the lender of the loan. The same information is available for Anchorage's Second Round PPP loan.

Even before the government made the PPP loan database information widely available, news media showed interest in the recipients of PPP loans. As relevant to this action, The Palm Beach Post published an article on July 9, 2020, entitled *Are the million-dollar PPP loans some Palm Beach County golf communities collected justified?*,[15] which noted that the SBA had released certain PPP borrower information in response to lawsuits "by a number of newspaper organizations over the identity of the loan recipients." The article then went on to explain "[t]he issue of whether it is appropriate for golf course communities to receive PPP loans has been debated," in part because "[s]ome golf course communities that accepted PPP loans in Palm Beach County have recently spent upward of $10 million on massive improvements to their clubhouses and golf courses." *Id.*

Noting that "[f]ifty-seven country clubs in Florida accepted the PPP funds" and "more than 400 country clubs and golf courses received loans throughout the country," the article highlighted

---

[15] Mike Diamond, *Are the million-dollar PPP loans some Palm Beach County golf communities collected justified?*, THE PALM BEACH POST (July 9, 2020, 7:30 AM), https://www.palmbeachpost.com/story/news/2020/07/09/are-million-dollar-ppp-loans-some-palm-beach-county-golf-communities-collected-justified/112287808/, attached herein as **Exhibit B**.

six organizations in particular as having received loans: (1) Hunter's Run, (2) Quail Ridge, (3) Wycliffe, (4) Old Palm, (5) Banyan Cay Resort Club, and (6) The Loxahatchee Club Homeowners Association. *Id.* Except for Banyan Cay Resort Club, Riner named all of the organizations identified in the Palm Beach Post article as defendants in this action.

**B. The Complaint**

Riner commenced this action by filing the Complaint [DE 1] on October 14, 2022—more than two years after The Palm Beach Post article was published and long after the PRAC database containing a trove of PPP borrower and loan data was made publicly available by the government and various news media outlets.

Riner alleges that he "is a regular homeowner and investor," that "[a] corporation with which Riner is the officer and principle [*sic*] in turn owns multiple homes in Florida," and that "[t]hrough ownership of these homes" he was an alleged association member of *two* (of the 43) defendants. Compl. ¶ 9. Riner does not allege that he has ever owned a home or been a member of any of the remaining 41 defendants' communities. Nevertheless, Riner alleges that he "is intimately familiar with the finances and organization of these particular homeowners associations as well as homeowners associations and country clubs in general, including details of how such community associations and country clubs are governed and how they raise funds through their membership and other sources of liquidity." *Id.*

Riner does not allege how he became "intimately familiar" with the internal organization and financial operations of homeowners associations generally or any of the defendants in particular. He does not, for example, allege that he served on the board or held any position of authority with the two clubs of which he allegedly is/was a member. Nor does he allege that has access to any of the defendants' non-public, internal records concerning their organizational structures or finances. Riner avoids addressing the issue entirely, failing to reveal exactly when, where, and how he learned the details concerning defendants' PPP loans that he alleges in the Complaint.

Aside from alleging his limited connections to two defendants, the remaining factual (i.e., non-conclusory) allegations in the Complaint merely repackage the following publicly available information concerning each defendant: (1) the type of organization (e.g., homeowners association, condominium association, or country club) (Compl. ¶¶ 11–53); and (2) with respect to the PPP loans that the defendants received, (a) the loan amount, (b) the date the loan was

approved, (c) whether the loan was forgiven, and (d) the amount forgiven (Compl. ¶¶ 89–132). The Complaint does not contain any specific allegations concerning, among other things, the dates that each defendant applied to receive its loan, the date that each defendant applied for forgiveness of its loan, or any information concerning the individual(s) who signed and submitted the loan and forgiveness applications on behalf of each defendant.

Anticipating that defendants would raise the FCA's public disclosure bar in response to the Complaint, Riner included a wholly conclusory and inadequate allegation seeking to take advantage of the "original source" exception under 31 U.S.C. § 3730(e)(4)(A) (Compl. ¶ 57):

> **V.    ORIGINAL SOURCE AND DISCLOSURES**
>
> 57.    There are no bars to recovery under 31 U.S.C. § 3730(e). To the extent that any allegations or transactions herein have been publicly disclosed, Relator has knowledge that is independent of and materially adds to any publicly disclosed allegations or transactions and had provided that information to the United States prior to filing the complaint by serving a voluntary Pre-Filing Disclosure Statement.

But Riner fails to plead what "independent" knowledge he has, or how that knowledge "materially adds" to the publicly disclosed allegations. Indeed, the remainder of the Complaint consists of bare conclusory allegations of FCA liability.

**C.  Riner's Two FCA Counts**

Riner alleges two FCA claims against all defendants. Both claims are based on the PPP loan and forgiveness applications that the defendants submitted to the government and Riner's contention that each defendant falsely certified their eligibility to receive PPP loans in those applications. Compl. ¶¶ 149–66.

As an initial matter, Riner fails to clearly delineate the statutory basis for his two FCA claims. The heading titles for Count I and Count II are identical: "PRESENTATION OF FALSE OR FRAUDULENT CLAIMS (31 U.S.C. § 3729(a)(1)(A))." Further, the allegations for Count I and Count II closely mirror each other and fail to provide the Defendants sufficient notice as to Riner's distinct theory in support of Count II, if any. This defect, standing alone, warrants dismissal of Riner's Complaint. *See Truesdale v. Venice Arms, Inc.*, No. 23-CV-23251, 2024 WL 307586, *2 (S.D. Fla. Jan. 27, 2024) (dismissing complaint where the complaint failed to "draw any distinction between the two counts and identify the specific regulatory provisions applicable to each respective theory.").

Further, both of Riner's claims fail under the FCA's public disclosure bar and because he failed to allege the required elements in accordance with the applicable pleading standards under Rules 12(b)(6) and 9(b).

## ARGUMENT AND MEMORANDUM OF LAW

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (cleaned up). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" because "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* at 678.

## I.    Dismissal Is Warranted Under the FCA's Public Disclosure Bar

Pursuant to 31 U.S.C. § 3730(e)(4)(A), "[t]he court ***shall*** dismiss an action or claim under this section. . . if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed . . . (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or (iii) from the news media, unless . . . the person bringing the action is an original source of the information." The public disclosure bar "strike[s] a balance between encouraging private persons to root out fraud and stifling parasitic lawsuits" brought by purported relaters having no material independent information to add to that which is already contained in the public record. *Graham Cnty. Soil & Water Conservation Dist.*, 559 U.S. at 295; *see Medco Health Solutions, Inc.*, 671 F.3d at 1222.

Courts in the Eleventh Circuit apply a three-prong test to determine whether the public disclosure bar applies: (1) whether the relator's allegations have been publicly disclosed; (2) if so, whether the allegations in the complaint are substantially the same as allegations or transactions contained in the public disclosures; and (3) if yes, whether the relator is an original source of that information. *U.S. ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 812 (11th Cir. 2015); *see also Cooper v. Blue Cross and Blue Shield of Fla., Inc.*, 19 F.3d 562, 565 n.4 (11th Cir. 1994).

Riner, as the relator in this action, "bears the burden of proving that the public disclosure bar does not preclude his FCA action." *See U.S. ex rel. May v. Purdue Pharma L.P.*, 811 F.3d 636, 640 (4th Cir. 2016). To avoid the public disclosure bar, Riner "must allege specific facts—as opposed to mere conclusions—showing exactly how and when [he] obtained direct and independent knowledge of the fraudulent acts alleged in the complaint and support those allegations with competent proof." *U.S. ex rel. Sedona Partners LLC v. Able Moving & Storage, Inc.*, No. 20-23242-CIV, 2021 WL 6932167, at *8 (S.D. Fla. Dec. 16, 2021), *report and recommendation adopted*, No. 20-CV-23242, 2022 WL 178225 (S.D. Fla. Jan. 20, 2022).

### A.  The Complaint Is Based On Publicly Disclosed Information

The first prong of the test looks at whether information has been disclosed in "a congressional, Government Accountability Office, or other ***federal report***, hearing, audit, or investigation"; or "***the news media***." 31 U.S.C. § 3730(e)(4)(A) (emphasis added); *Osheroff*, 776 F.3d at 812. As the U.S. Supreme Court has explained, the "sources of public disclosure in § 3730(e)(4)(A) . . . suggest that the public disclosure bar provides a broa[d] sweep." *Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 563 U.S. 401, 408 (2011). Lower courts, including the Eleventh Circuit, have determined that such sources of public disclosure include information found on publicly available websites. *See Osheroff*, 776 F.3d at 813; *see also U.S. ex rel. Brown v. Walt Disney World Co.*, No. 6:06-cv-1943, 2008 WL 2561975, at *13 (M.D. Fla. June 24, 2008) (finding Wikipedia pages constitute "news media"); *U.S. ex rel. Jacobs v. JP Morgan Chase Bank, N.A.*, 20-20543-CIV, 2022 WL 573663, at *6 (S.D. Fla. Feb. 25, 2022) (holding "publicly available online blogs" constitute "news media"). The Eleventh Circuit has also held that a federal agency's response to a FOIA request constitutes a "report" within the meaning of the FCA's public disclosure bar. *U.S. ex rel. Lewis v. Walker*, 438 F. App'x 885, 888 (11th Cir. 2011).

Here, all of the information alleged in the Complaint concerning the defendants' PPP loans is publicly available through websites maintained by the government and various news media organizations. PRAC's publicly available website provides a host of information regarding PPP loan recipients, including PPP loan amounts, the date PPP loans were approved, and the PPP loan amounts forgiven. The SBA also produced this information in response to FOIA requests and made it publicly available on its website.[16] Various news media organizations then repackaged and

---

[16] <https://data.sba.gov/dataset/ppp-foia.>

republished the information that the government provided, amplifying the scope and reach of these public disclosures. Given the widespread public disclosure of the PPP loan information alleged in the Complaint, the first prong of the public disclosure bar test is easily satisfied.

**B. Riner's Allegations Are Substantially The Same As The Public Disclosures**

The second prong of the test considers whether the relator's allegations are "substantially the same" as the public disclosures. *Osheroff*, 776 F.3d at 814. This consideration is a "quick trigger" to get to the more exacting original source inquiry and is satisfied if the relator's claims are based "in any part on publicly disclosed information." *Id.* (cleaned up); *see also U.S. ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc.*, 841 F.3d 927, 934 (11th Cir 2016); *U.S. ex rel. Zafirov v. Fla. Med. Assocs. LLC*, No. 8:19-CV-1236-KKM-SPF, 2021 WL 4443119, at *7 (M.D. Fla. Sept. 28, 2021). This prong does not require a "complete identity" of allegations; rather, "[t]he key inquiry is whether the disclosures could have put the government on notice of the fraud alleged in the *qui tam* complaint." *Zafirov*, 2021 WL 4443119, at *7.

Here, again, there is no doubt that this prong is satisfied. The Complaint contains no specific allegations as to each individual defendant other than the loan amount, the date the loan was approved, whether the loan was forgiven, and the amount forgiven. The information contained in the Complaint is not merely "substantially the same" as the public disclosures. ***All*** of this information was made publicly available through government and news media resources well before Riner filed his *qui tam* Complaint.

Even before the government made the full PPP dataset publicly available, The Palm Beach Post published an article specifically raising the issue of eligibility and questioning whether it was appropriate for golf course communities located in South Florida (and elsewhere) to receive PPP loans. *See* **Exhibit B.** That article was published in July 2020, more than two years before Riner filed his complaint in October 2022, and it specifically named five of the defendants that Riner included in his Complaint in this action. *Id.*

To these public disclosures, Riner adds only bare allegations of wrongdoing—i.e., his threadbare legal conclusions that defendants were ineligible for PPP benefits and "knowingly" submitted false claims. This Court is not obliged to accept those conclusions. Nor are they relevant to the public disclosure bar. The Eleventh Circuit has clarified that this prong is triggered by the public disclosure of the "transactions" irrespective of whether the disclosure indicates wrongdoing. *See Osheroff*, 776 F.3d at 814; *U.S. ex rel. Lorona v. Infilaw Corp.*, No. 3:15-CV-959-J-34PDB,

2019 WL 3778389, at *13 (M.D. Fla. Aug. 12, 2019) (rejecting relators' argument "that their allegations are sufficiently distinct from the matters discussed in these articles because the Public Disclosures do not specifically accuse the Infilaw Defendants of fraud on the federal government" based on *Osheroff*). Accordingly, even if the public disclosures contained in The Palm Beach Post article had not raised the specific allegations of wrongdoing that Riner repeats in the complaint, the public availability of the PPP data from the government and various news media sources sufficiently disclosed the "transactions" on which Riner's FCA claims are based to satisfy the second prong of the test.

### C.  Riner Is Not An "Original Source" Of This Information

Under the third prong of the test, Riner must plead and prove that he is an "original source" of the information alleged in the Complaint. 31 U.S.C. § 3730(e)(4)(B). An "original source" is an individual who: (1) prior to the relevant public disclosure, voluntarily disclosed to the government the information on which his allegations are based, or (2) has independent knowledge of and "materially adds" to the publicly disclosed allegations and voluntarily provided that information to the government before filing his FCA Complaint. *Id.*

The "original source" inquiry has been described as "exacting," and for good reason. "To establish original source status knowledge, a *qui tam* plaintiff must allege specific facts—as opposed to mere conclusions—showing exactly how and when he or she obtained direct and independent knowledge of the fraudulent acts alleged in the complaint and support those allegations with competent proof." *U.S. ex rel. Brown v. BankUnited Tr. 2005-1*, 235 F. Supp. 3d 1343, 1358 (S.D. Fla. 2017) (quoting *U.S. ex rel. Hafter D.O. v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1162 (10th Cir. 1999)). "Secondhand information, speculation, background information, or collateral research do not satisfy a relator's burden of establishing the requisite knowledge." *Id.* Similarly, "[b]ackground information that helps one understand or contextualize a public disclosure is insufficient to grant original source status." *Osheroff*, 776 F.3d at 815; *see also Fresenius*, 841 F.3d at 936 ("The phrase 'direct and independent' is most naturally read as creating an extreme limit on secondhand knowledge that is sufficient to qualify as an 'original source.'"). Compilations of publicly disclosed information are likewise inadequate. *U.S. ex rel. Lewis v. Walker*, 438 F. App'x 885, 888 (11th Cir. 2011).

The Eleventh Circuit's decision in *U.S. ex rel. Saldivar v. Fresenius Med. Care Holdings*, 841 F.3d 927 (11th Cir. 2016), is instructive. The *Fresenius* relator was employed by the defendant,

a provider of outpatient services that billed the Center for Medicaid and Medicare Services (**CMS**). The district court determined that, although the relator's complaint was informed by prior public disclosures, he was nonetheless an original source based on his knowledge of his employer's practices and his "discussions with supervisors and coworkers about overfill use and billing" *Id.* at 930.

Reversing, the Eleventh Circuit noted the relator "was not himself directly involved in billing." *Id.* at 931. The court held that secondhand information learned from fellow employees is not enough to qualify as an original source, explaining:

> The phrase "direct and independent" is most naturally read as creating an extreme limit on secondhand knowledge that is sufficient to qualify as an "original source." Being told what another department is doing is almost necessarily not direct knowledge of that department's behavior. In this case, Saldivar was told that inventory spreadsheets were used for billing purposes. This is not direct knowledge of the alleged improper billing. Indeed, it is on its face indirect; he was told by another that his work product was used, and it appears he had no direct knowledge of how billing occurred or even how his inventory was factored into the billing.
>
> ****
>
> While Saldivar had independent knowledge of the administration of overfill, his knowledge of the critical component—the alleged billing for drugs Fresenius received at no cost—was derived from secondhand sources. To the extent Saldivar's information is not secondhand, it appears to be more akin to *Osheroff*'s background information. . . Saldivar thus fails to meet an essential element of the original source requirement, that he have "*direct and independent knowledge* of the information on which the allegations are based."

*Id*. at 936–37. On this basis, the Eleventh Circuit remanded the lawsuit for dismissal.

In comparison to the failed relator in *Fresenius*, Riner is even further removed from the information alleged in his Complaint. He is a complete stranger to all but 2 of the 43 defendants named in this action. There is no indication he has ever been to any of the properties or knows anyone living in, or employed by, those defendants. Riner does not even have secondhand knowledge of the defendants (which would be insufficient under *Fresenius*); instead, Riner restates publicly available information and then proffers legal conclusions from a distance. Riner cannot

possibly be an "original source" for his allegation that Defendants "knowingly" submitted a false claim for PPP benefits. Indeed, Riner's claim that he is "original source" for all of the 79 defendants that he named in his three unsealed *qui tam* complaints is a glaring indication that he lacks the requisite connection to any defendant.

Aside from the wholly conclusory allegation that he has knowledge that is independent of and materially adds to any publicly disclosed allegations or transactions (Compl. ¶ 57), Riner alleges none of the details necessary to meet his burden to prove that the "original source" exception applies. Where, as here, "the 'knowledge' upon which Plaintiff's *qui tam* Complaint is based is 'derivative of the information of others' and/or 'dependent on a public disclosure'" it is "not 'direct and independent'" and the "Plaintiff is therefore not an 'original source.'" *U.S. v. Molina Healthcare of Fla., Inc.*, No. 12-24298-CIV, 2015 WL 5562313, at *10 (S.D. Fla. Sept. 22, 2015), *aff'd sub nom. Wilhelm v. Molina Healthcare of Fla., Inc.*, 674 F. App'x 960 (11th Cir. 2017) (quoting *U.S. ex rel. Hafter D.O. v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160, 1162 (10th Cir. 1999)). Courts do not hesitate to dismiss FCA complaints based on the public disclosure bar. *See, e.g.*, *Osheroff* (11th Cir. 2015); *Fresenius* (11th Cir 2016); *Odom* (N.D. Fla. 2023); and *Zafirov* (M.D. Fla. 2021). The same result should obtain here.

Moreover, a dismissal with prejudice is warranted because further pleading and discovery cannot avoid hard facts: Congress created a public website containing all of the relevant PPP loan data, various news media outlets republished that information to amplify the public disclosure of that data, and Riner has no connection to the defendants other than that he pulled the publicly available information together to assert the claims alleged in his Complaint.

## II.    The Complaint Fails to Allege Each Defendant's Alleged Fraud With Sufficient Particularity

An FCA claim has four essential elements: "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *U.S. ex rel. v. Mortg. Invs. Corp.*, 987 F.3d 1340, 1346–47 (11th Cir. 2021).

"In addition to the ordinary pleading rules, an FCA claim is based on fraud and therefore is subject to the heightened pleading standard of Rule 9(b), which requires a party to 'state with particularity the circumstances constituting fraud or mistake.'" *U.S. v. Odom*, No. 3:20CV3678-MCR-ZCB, 2023 WL 5203000, at *5 (N.D. Fla. June 22, 2023). To satisfy Rule 9(b), the complaint must allege: "(1) precisely what statements were made in what documents or oral representations

or what omissions were made, and (2) ***the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same***, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002) (emphasis added); *see also Cooper v. Blue Cross & Blue Shield of Fla., Inc.*, 19 F.3d 562, 567 (11th Cir. 1994) (requiring FCA pleading to include facts as to time, place, and substance of the alleged fraud). Failing to meet Rule 9(b)'s heightened pleading standard is grounds for dismissal under Rule 12(b)(6). *See Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002).

In short, a relator must "allege the 'who,' 'what,' 'where,' 'when,' and 'how' of fraudulent submissions to the government." *U.S. v. Landmark Hosp. of Athens*, LLC, 3:21-CV-00036-CAR, 2023 WL 3097948, at *9 (M.D. Ga. Apr. 26, 2023) ("The Amended Complaint contains no information concerning who at PARMC or any other medical facility submitted any requests for payment to the Government…"). Riner, however, fails to allege any of the necessary details for any of the 43 defendants he named in his *qui tam* Complaint. Indeed, Riner does not even attempt to identify which authorized representative for each defendant submitted their loan and forgiveness applications and when those applications were submitted—presumably because that information was not included in the publicly disclosed PPP databases on which all of Riner's allegations are based.

Riner's failure to allege with particularity the details of the alleged fraud as to each defendant destroys his ability to establish the FCA's scienter requirement. The Supreme Court recently explained that "[t]he FCA's scienter element refers to respondents' knowledge and subjective beliefs—not to what an objectively reasonable person may have known or believed." *U.S. ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 749 (2023). Thus, establishing scienter under the FCA requires proof that a person (1) "has actual knowledge of the information"; (2) "acts in deliberate ignorance of the truth or falsity of the information"; or (3) "acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A). Here, Riner presents only conclusory allegations that the defendants "knowingly" submitted a false claim. There is no elaboration or facts alleged in support; Riner relies exclusively on a "threadbare recital[]" and "formulaic recitation" of the elements that is insufficient under *Twombly* and *Iqbal*.

Congress enacted the PPP in haste in response to an economic emergency. SBA-approved financial intermediaries encouraged employers to take PPP loans. While expeditiously administering the CARES Act, the SBA undertook to publish a series of "FAQs" designed to guide the public understanding of the PPP loan process.[17] In total, the SBA published 72 questions and answers between April 3, 2020 and June 13, 2023. *Id.* Riner's failure to identify when the defendants applied for their individual PPP loans fatally undermines his reliance on the FAQs to establish defendants' scienter.[18] *See* Compl. ¶¶ 69, 81.

To be sure, Riner does not allege that any defendant used its PPP loan proceeds for a purpose other than what Congress intended. Instead, Riner merely alleges technical ineligibility and asserts that in April 2020—when the regulatory landscape surrounding PPP was changing by the day—the defendants should have interpreted the CARES Act as he does now. That is not plausible and does not establish scienter.

Consider a comparison. The defendants here are not health care providers submitting false claims to CMS notwithstanding decades of regulatory guidance. The PPP has no equivalent. The COVID-19 crisis and Congress's response are *sui generis*. The notion that seventy-nine defendants, most of whom are governed by volunteer boards, "knowingly" decided to defraud the government is not plausible. A one-word recitation of the element "knowingly" does not satisfy *Twombly* and its progeny.

Riner's reliance in the Complaint on the PPP loan and forgiveness application forms further undermines his ability to allege the required FCA elements—including scienter—with the requisite specificity under Rule 9(b). Compl. ¶¶ 67–71. It is also indicative of the carelessness of Riner's "one size fits all" approach to pleading the FCA claims against all defendants.

Addressing each individual defendant's eligibility at the time it applied for a PPP loan, Riner includes snippets from SBA Form 2483 and then goes on to allege, in a conclusory fashion, that each defendant "falsely certified that it was 'eligible to receive a loan under the rules in effect at the time th[e] application is submitted.'" Compl. ¶¶ 89–132. By selectively highlighting only portions of SBA Form 2483 in the Complaint, Riner strips the referenced certifications of their

---

[17] U.S. Small Business Administration, *FAQ for PPP Borrowers and Lenders*, available at https://www.sba.gov/sites/default/files/2023-07/FAQPPPBrrwrsLndrsQstns1_72.pdf, (last updated June 13, 2023).

[18] Additionally, the SBA specifically notes the FAQs do not "carry the force and effect of law independent of the statutes and regulations on which it is based." *Id.* at n.1

necessary context. Indeed, none of the excerpted sections on which Riner relies contain any detailed representations concerning the applicant's organization type, which is the lynchpin of Riner's FCA theory against the defendants in this action (as well as his other, nearly identical actions pending in other courts).

The original version of SBA Form 2483, which was the operative form for PPP loan applications submitted between the start of the PPP program in April 2020 through June 12, 2020, included a catchall "Other" checkbox that allowed applicants to indicate to the SBA and lenders that their organizations were not one of the types of organizations listed in the more specific checkboxes that preceded it.



SBA Form 2483 (red box added for emphasis).

On its face, the application form signaled to applicants that organizations other than those specifically listed could apply for PPP loans. If that were not so, then there would not have been any reason to include an "Other" option as part of the form. Notably, the application form did not require "Other" applicants to specify their organization type, necessarily preventing such applicants from intentionally misrepresenting in their applications that their type of organization was not eligible to receive a PPP loan under then-applicable SBA rules and guidance. Moreover, aside from this checkbox, SBA Form 2483 contained no other questions, required no other certifications, and offered no other instructions concerning the specific types of organizations that were and were not eligible to receive PPP loans at that time. Accordingly, there was nothing in the two-page application or two pages of instructions that accompanied it that would highlight for the individual representatives of defendants tasked with reviewing, completing, and signing the applications (none of whom Riner identifies in the Complaint) that their organizations might not be eligible to receive a PPP loan based solely on their organization type.

Riner's allegations concerning each defendant's alleged false certifications in their respective loan forgiveness applications are equally problematic. Riner relies exclusively on a snippet from the certifications section of SBA Form 3508S, claiming that "when PPP loan

recipients apply for forgiveness of their loan, they must further certify, through their authorized representative, that they have 'complied with all requirements in the Paycheck Protection Program Rules,' including the statute passed in the CARES Act and the subsequent amendments." Compl. ¶ 71. However, Riner again omits a key portion of the cited form—namely, the boldfaced legend at the top of the form stating that "**A BORROWER MAY USE THIS FORM ONLY IF THE BORROWER RECEIVED A PPP LOAN OF $150,000 OR LESS**."

SBA Form 3508S (red box added for emphasis)

The instructions accompanying SBA Form 3508S reiterated that it could be used "only if the loan amount you received from your Lender was $150,000 or less for an individual First or Second Draw PPP Loan" and that if the loan received exceeded $150,000 "you must apply for forgiveness of your PPP loan using SBA Form 3508 or 3508EZ (or lender's equivalent form)." Neither of those forms contained the same certification that Riner references from SBA Form 3508S. Instead, SBA Forms 3508 and 3508EZ contained a certification suggesting to the applicant that the SBA was not relying on the applicant's representations and that it would conduct its own inquiry specifically into the applicant's eligibility before making a forgiveness determination.

Another important distinction is that for the smaller loans subject to SBA Form 3508S the borrowers were not required to submit supporting documentation with their forgiveness applications. In contrast, the borrowers who received larger loans were required to submit with their SBA Form 3508 or 3508EZ a detailed calculation worksheet along with "documentation verifying payroll costs, the existence of obligations and service (as applicable) prior to February 15, 2020, and eligible business mortgage interest payments, business rent or lease payments,

business utility payments, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures."[19]

Accordingly, the compliance certification in SBA Form 3508S only applied to 7 of the 43 defendants that Riner named in this action and is irrelevant to the 36 other defendants. Compl. ¶ 89. The inapplicability of the forgiveness application form that Riner falsely asserts uniformly applied to all of the defendants exemplifies the deficiencies with the unspecific, broad stroke allegations that permeate the Complaint.

## III.   Riner's Allegations Regarding Economic Uncertainty Are Barred as a Matter of Law By The SBA Safe Harbor

Riner contends that all of the defendants falsely certified their "economic uncertainty" to obtain PPP loans because all had access to alternative sources of funding. Compl. ¶¶ 69, 82, 89. 15 U.S.C. § 636(a)(36)(G). Again, the complaint makes clear that Riner has no inside information concerning each individual defendant, as he fails to allege any details concerning any of the defendants' financial situations or how their financial situations prevented their "economic uncertainty" certifications. In any event, the "economic uncertainty" certification is irrelevant to the vast majority of the defendants in this action.

Although a certification of "economic uncertainty" is part of the PPP program, the SBA created a safe harbor for loans under $2 million. *See* 86 Fed. Reg. 3692-01, 3706 & n.87 ("any PPP borrower, together with its affiliates, that received PPP loans with an original principal amount of less than $2 million will be deemed to have made the required certification concerning the necessity of the loan request in good faith"). Faced with a similar claim premised on a supposedly false economic uncertainty certification, at least one court has ruled as a matter of law that SBA's safe harbor for loans under $2 million is "conclusive on [a d]efendant's potential liability for its economic uncertainty certifications." *U.S. v. ManPow, LLC*, No. 2:21-CV-05418-VAP-ADSx, 2024 WL 305699, at *9 (C.D. Cal. Jan. 3, 2024).

In the *ManPow* case, the relators alleged claims against the defendant under the FCA stemming from the defendant's PPP loan applications. *Id.* at *1. The relators alleged, in pertinent

---

[19] The instructions accompanying SBA Form 3508S make this clear: "SBA Form 3508S requires fewer calculations and less documentation for eligible borrowers. SBA Form 3508S does not require borrowers to show the calculations used to determine their loan forgiveness amount. However, SBA may request information and documents to review those calculations as part of its loan review or audit processes."

part, that the defendant "falsely certified that . . . economic uncertainty made the two loans it requested necessary to support its ongoing operations." *Id.* In granting summary judgment in the defendant's favor, the *ManPow* court held "[t]he SBA effectively absolved borrowers with principal loan amounts of less than $2 million of this requirement via its rulemaking process by later 'deem[ing] [them] to have made the required certification . . . in good faith.'" *Id.* at 9.

All but 5 of the 43 defendants that Riner named in this action received PPP loans under $2 million and therefore have the benefit of this bright-line safe harbor. Compl. ¶ 89. Thus, in addition to the public disclosure bar and Riner's failure to satisfy the applicable pleading standards, the safe harbor bars his FCA claims alleged against the overwhelming majority of the defendants to the extent they are based on those defendants' economic uncertainty certifications.

## IV.  The Shotgun Complaint Warrants Dismissal

Shotgun pleadings are routinely condemned in the Eleventh Circuit because they are a waste of judicial resources. *See Vibe Micro, Inc. v. Shabanets*, 878 F. 3d 1291, 1295 (11th Cir. 2018). Courts recognize four types of shotgun pleadings. *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F. 3d 1313, 1321-23 (11th Cir. 2015). Riner's Complaint falls into the third recognized category: "pleadings that do not separate into a different count each cause of action or claim for relief." *Id.* at 1322-23. Count I and Count II purport to assert separate violations of the False Claims Act under the same statutory basis. *See* Compl. at ¶¶ 149-166. The allegations, however, closely mirror each other, failing to substantiate Riner's separate claims under the False Claims Act and failing to provide Defendants sufficient notice as to Riner's distinct theories, if any.  Riner's failure to distinguish between the claims asserted, standing alone, warrants dismissal. *See Sledge v. Goodyear Dunlop Tires N. Am. Ltd.*, 275 F. 3d 1014, 1018 n. 8 (11th Cir. 2001) ("The failure of the plaintiff to identify his claims with sufficient clarity to enable the defendant to frame a [responsive] pleading constitutes shotgun pleading.").

## <u>CONCLUSION</u>

For the foregoing reasons, the Defendants joining in this motion respectfully request that this Court dismiss, with prejudice, the FCA claims against them, and grant such other relief this Court deems appropriate.

Respectfully submitted,

By:/s/ Tama Beth Kudman
Tama Beth Kudman
Florida Bar No. 637432
**KUDMAN TRACHTEN ALOE POSNER LLP**
7108 Fairway Drive, Suite 130
Palm Beach Gardens, Florida 33418
Telephone: (561) 472-0811
tkudman@kudmanlaw.com

David N. Saponara (admitted *PHV*)
488 Madison Avenue, 23rd Floor
New York, New York 10022
Telephone: (212) 868-1010
dsaponara@kudmanlaw.com

*Counsel for Frenchmans Reserve Country Club and Mizner Country Club, Inc.*

By: /s/Joseph M. Cobo
Joseph M. Cobo, Esq.
FBN: 114204
Email: jcobo@kdvlaw.com
One Financial Plaza
**KAUFMAN DOLOWICH, LLP**
100 S.E. 3rd Ave., Suite 1500
Fort Lauderdale, FL 33394
Tel. (954) 302-2360
Fax: (888) 464-7982

*Counsel for the Aragon Condominium Association of Boca Raton, Inc.*

By: /s/ William N. Shepherd
William N. Shepherd (Fla. Bar No. 88668)
Jeffrey M. Schacknow (Fla. Bar No. 1004628)
Henry A. Moreno (Fla. Bar No. 1031432)
**HOLLAND & KNIGHT LLP**
777 South Flagler Drive
Suite 1900, West Tower
West Palm Beach, FL 33401
Telephone: (561)650-8338
Facsimile: (561) 650-8399
William.Shepherd@hklaw.com
Jeffrey.schacknow@hklaw.com
henry.moreno@hklaw.com

*Counsel for Mirasol Club & Association, Inc.*

By: /s/ William Xanttopoulos
JOHN CODY GERMAN
Florida Bar No.: 58654
WILLIAM XANTTOPOULOS
Florida Bar No. 997668
**COLE, SCOTT & KISSANE, P.A.**
Cole, Scott & Kissane Building
9150 South Dadeland Boulevard, Suite 1400
P.O. Box 569015
Miami, Florida 33156
Telephone (786) 300-3941
Facsimile (305) 373-2294
william.xanttopoulos@csklegal.com
paola.valdes@csklegal.com

*Counsel for The Grand Condominium Association, Inc*

By: /s/Joseph M. Cobo
Joseph M. Cobo, Esq.
FBN: 114204
Email: jcobo@kdvlaw.com
**KAUFMAN DOLOWICH, LLP**
One Financial Plaza
100 S.E. 3rd Ave., Suite 1500
Fort Lauderdale, FL 33394
Tel. (954) 302-2360
Fax: (888) 464-7982

*Counsel for the Crossings Homeowners Association, Inc.*

By: /s/Joseph M. Cobo
Joseph M. Cobo, Esq.
FBN: 114204
Email: jcobo@kdvlaw.com
**KAUFMAN DOLOWICH, LLP**
One Financial Plaza
100 S.E. 3rd Ave., Suite 1500
Fort Lauderdale, FL 33394
Tel. (954) 302-2360
Fax: (888) 464-7982

*Counsel for Fortune House Condominium Association, Inc.*

By: /s/ Marcos D. Jiménez
Marcos D. Jiménez
Florida Bar No. 441503
Brittany L. Finnegan
Florida Bar No. 1032047
**LEÓN COSGROVE JIMÉNEZ, LLP**
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Tel: (305) 740-1975
Email: bfinnegan@leoncosgrove.com
Email: anoonan@leoncosgrove.com
Email: vcerra@leoncosgrove.com

*Counsel for Deering Bay Yacht and Country Club, Inc.*

By: */s/ Christopher R. Parkinson*
CHRISTOPHER R. PARKINSON
Florida Bar No. 112114
cparkinson@morankidd.com
JASON P. DEL ROSSO
Florida Bar No. 125379
jdelrosso@morankidd.com
BRIAN P. MORAN
Florida Bar No. 1044082
bpmoran@morankidd.com
**Moran Kidd Lyons Johnson Garcia, P.A**
111 North Orange Avenue, Suite 900
Orlando, Florida 32801
Telephone: (407) 841-4141
Facsimile: (407) 841-4148

*Attorneys for Frenchman's Creek, Inc.*

By: /s/Joseph M. Cobo
Joseph M. Cobo, Esq.
FBN: 114204
Email: jcobo@kdvlaw.com
**KAUFMAN DOLOWICH, LLP**
One Financial Plaza
100 S.E. 3rd Ave., Suite 1500
Fort Lauderdale, FL 33394
Tel. (954) 302-2360
Fax: (888) 464-7982

*Counsel for Leverett House Condominium Association, Inc.*

By: */s/ Stevan J. Pardo*
Stevan J. Pardo, Esq.
Florida Bar No. 438626
Linsey M. Lovell, Esq.
Florida Bar No. 121581
**PARDO JACKSON GAINSBURG & SHELOWITZ, PL**
100 Southeast Second Street, Suite 2050
Miami, FL 33131
Phone: 305-358-1001
Fax: 305-358-2001
Email: SPardo@pardojackson.com
         LLovell@pardojackson.com
         CFernandez@pardojackson.com

*Counsel for Ocean Club Community Association, Inc.*

By: /s/Joseph M. Cobo
Joseph M. Cobo, Esq.
FBN: 114204
Email: jcobo@kdvlaw.com
**KAUFMAN DOLOWICH, LLP**
One Financial Plaza
100 S.E. 3rd Ave., Suite 1500
Fort Lauderdale, FL 33394
Tel. (954) 302-2360
Fax: (888) 464-7982

*Counsel for Palm Beach Towers Condominium Association, Inc.*

By: */s/     Jonathan Etra*
Jonathan Etra
Florida Bar No. 686905
Samuel Ludington
Florida Bar No. 1031284
**Nelson Mullins Riley & Scarborough, LLP**
One Biscayne Towner, 21st Floor
2 South Biscayne Blvd.
Miami, FL 33131
Telephone: 305.373.9447
Facsimile: 305.995.6449
Jonathan.Etra@nelsonmullins.com
Sam.Ludington@nelsonmullins.com

*Counsel for Wycliffe Golf and Country Club Homeowners Association, Inc.*

By: /s/Joseph M. Cobo
Joseph M. Cobo, Esq.
FBN: 114204
Email: jcobo@kdvlaw.com
**KAUFMAN DOLOWICH, LLP**
One Financial Plaza
100 S.E. 3rd Ave., Suite 1500
Fort Lauderdale, FL 33394
Tel. (954) 302-2360
 Fax: (888) 464-7982

*Counsel for the Township*
*Community Master Association, Inc.*


By: /s/ Raymond A. James
Raymond A. James
Florida Bar No. 1026218
Charles W. Prueter
*Admitted Pro Hac Vice*
**FORTIF LAW PARTNERS, LLC**
2021 Morris Avenue, Suite 300
Birmingham, AL 35203
raymond@fortif.com | 205.832.9106
charles@fortif.com | 205.832.9109

*Counsel for Turnberry Towers*
*Condominium Association, Inc.*

By:/s/    Jonathan Etra
Jonathan Etra
Florida Bar No. 686905
Samuel Ludington
Florida Bar No. 1031284
**Nelson Mullins Riley & Scarborough, LLP**
One Biscayne Towner, 21st Floor
2 South Biscayne Blvd.
Miami, FL 33131
Telephone: 305.373.9447
Facsimile: 305.995.6449
Jonathan.Etra@nelsonmullins.com
Sam.Ludington@nelsonmullins.com

*Counsel for Old Palm Golf Club, Inc.*


By:/s/   Samantha M. Gerencir
Samantha M. Gerencir (FBN 1019553)
Jason P. Mehta (FBN 106110)
**Foley & Lardner LLP**
100 N. Tampa Street, Suite 2700
Tampa, FL 33602
Telephone: (813) 229-2300
Facsimile: (813) 221-4210 jmehta@foley.com
samantha.gerencir@foley.com

*Counsel for Willoughby Golf Club, Inc.*

By: /s/Andrew B. Zelmanowitz
Andrew B. Zelmanowitz, Esq.
Florida Bar No. 74202
Nikki Frances Branch, Esq.
Florida Bar No. 1039430
**BERGER SINGERMAN LLP**
201 East Las Olas Blvd.,
Suite 1500
Fort Lauderdale, FL 33301
Telephone: 954-525-9900
Facsimile: 954-523-2872
 azelman@bergersingerman.com
 nbranch@bergersingerman.com
 DRT@bergersingerman.com
 ltorres@bergersingerman.com
 mavin@bergersingerman.com

*Counsel for Williams Island
Property Owners' Association, Inc.*

By: */s/ David C. Borucke*
BARRY A. POSTMAN
Florida Bar No.:  991856
DAVID C. BORUCKE
Florida Bar No.: 039195
JUSTIN C. SOREL
**COLE, SCOTT & KISSANE, P.A.**
Esperante Building
222 Lakeview Avenue, Suite 120
West Palm Beach, Florida 33401
Telephone (561) 383-9234
Facsimile (561) 683-8977
E-mail: barry.postman@csklegal.com
E-mail: david.borucke@csklegal.com
E-mail: justin.sorel@csklegal.com

*Counsel for Anchorage Resort And Yacht Club
Condominium Association; Bal Harbour 101
Condominium Association, Inc.; Bocaire
Country Club, Inc.; Doral Park Country Club
Association; Lake Clarke Gardens
Condominium, Inc.; Meadowood Golf & Tennis
Club Inc.; Pine Island Ridge Country Club
Inc.; Quail Ridge Property Owners Association
Inc.; and Yacht & Country Club, Inc.*

By: /s/Adam M. Schachter
ADAM M. SCHACHTER
Florida Bar No. 647101
aschachter@gsgpa.com
DAN S. GELBER
Florida Bar No. 512877
dan@gsgpa.com
Christopher S. Sundby
Florida Bar No. 1026060
csundby@gsgpa.com
**GELBER SCHACHTER & GREENBERG, P.A.**
One Southeast Third Avenue, Suite 2600
Miami, Florida 33131
Telephone. (305) 728-0950

*Counsel for Royal Palm Improvement Association, Inc.*

By: /s/ Carly Kligler
Carly A. Kligler, Esq.
Fla. Bar. No. 83980
**HILGERS GRABEN PLLC**
1221 Brickell Avenue, Suite 900
Miami, Florida 33131
Tel. 305.630.8304
ckligler@hilgersgraben.com
Paralegals@hilgersgraben.com

*Counsel for Turnberry Ocean Colony Master Association, Inc.*

AND

By: s/ James K. Parker
James K. Parker, Esq.
Fla Bar No. 157526
Dominique G. Brown
Fla Bar No. 1010187
**BOYD RICHARDS PARKER & COLONNELLI, P.L.**
100 S.E. 2nd Street., Suite 2600
Miami, Florida 33131
(786) 425-1045
jparker@boydlawgroup.com
dbrown@boydlawgroup.com

*Co-counsel for Turnberry Ocean Colony Master Association, Inc.*

## REQUEST FOR HEARING

In accordance with Local Rule 7.1(b)(2), the Defendants request a hearing on the above motion and concurrently filed Defendants' *Joint Motion For Judicial Notice* and estimate that 90 minutes would be sufficient. A hearing will allow for full consideration of a threshold obstacle applicable to each of the defendants and, thus, potentially conserve substantial private and judicial resources.

By:/s/ Tama Beth Kudman
Tama Beth Kudman
Florida Bar No. 637432
**KUDMAN TRACHTEN ALOE POSNER LLP**
7108 Fairway Drive, Suite 130
Palm Beach Gardens, Florida 33418
Telephone: (561) 472-0811
tkudman@kudmanlaw.com

David N. Saponara (admitted *PHV*)
488 Madison Avenue, 23rd Floor
New York, New York 10022
Telephone: (212) 868-1010
dsaponara@kudmanlaw.com

*Counsel for Frenchmans Reserve Country Club and Mizner Country Club, Inc.*

By: /s/Joseph M. Cobo
Joseph M. Cobo, Esq.
FBN: 114204
Email: jcobo@kdvlaw.com
One Financial Plaza
**KAUFMAN DOLOWICH, LLP**
100 S.E. 3rd Ave., Suite 1500
Fort Lauderdale, FL 33394
Tel. (954) 302-2360
Fax: (888) 464-7982

*Counsel for the Aragon Condominium Association of Boca Raton, Inc.*

By: /s/ William N. Shepherd
William N. Shepherd (Fla. Bar No. 88668)
Jeffrey M. Schacknow (Fla. Bar No. 1004628)
Henry A. Moreno (Fla. Bar No. 1031432)
**HOLLAND & KNIGHT LLP**
777 South Flagler Drive
Suite 1900, West Tower
West Palm Beach, FL 33401
Telephone: (561)650-8338
Facsimile: (561) 650-8399
William.Shepherd@hklaw.com
Jeffrey.schacknow@hklaw.com
henry.moreno@hklaw.com

*Counsel for Mirasol Club & Association, Inc.*

By: /s/ William Xanttopoulos
JOHN CODY GERMAN
Florida Bar No.: 58654
WILLIAM XANTTOPOULOS
Florida Bar No. 997668
**COLE, SCOTT & KISSANE, P.A.**
Cole, Scott & Kissane Building
9150 South Dadeland Boulevard, Suite 1400
P.O. Box 569015
Miami, Florida 33156
Telephone (786) 300-3941
Facsimile (305) 373-2294
william.xanttopoulos@csklegal.com
paola.valdes@csklegal.com

*Counsel for The Grand Condominium Association, Inc*

By: /s/Joseph M. Cobo
Joseph M. Cobo, Esq.
FBN: 114204
Email: jcobo@kdvlaw.com
**KAUFMAN DOLOWICH, LLP**
One Financial Plaza
100 S.E. 3rd Ave., Suite 1500
Fort Lauderdale, FL 33394
Tel. (954) 302-2360
Fax: (888) 464-7982

*Counsel for the Crossings
Homeowners Association, Inc.*

By: /s/Joseph M. Cobo
Joseph M. Cobo, Esq.
FBN: 114204
Email: jcobo@kdvlaw.com
**KAUFMAN DOLOWICH, LLP**
One Financial Plaza
100 S.E. 3rd Ave., Suite 1500
Fort Lauderdale, FL 33394
Tel. (954) 302-2360
Fax: (888) 464-7982

*Counsel for Fortune House
Condominium Association, Inc.*

By: /s/ Marcos D. Jiménez
Marcos D. Jiménez
Florida Bar No. 441503
Brittany L. Finnegan
Florida Bar No. 1032047
**LEÓN COSGROVE JIMÉNEZ, LLP**
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Tel: (305) 740-1975
Email: bfinnegan@leoncosgrove.com
Email: anoonan@leoncosgrove.com
Email: vcerra@leoncosgrove.com

*Counsel for Deering Bay Yacht and
Country Club, Inc.*

By: /s/ Christopher R. Parkinson
CHRISTOPHER R. PARKINSON
Florida Bar No. 112114
cparkinson@morankidd.com
JASON P. DEL ROSSO
Florida Bar No. 125379
jdelrosso@morankidd.com
BRIAN P. MORAN
Florida Bar No. 1044082
bpmoran@morankidd.com
**Moran Kidd Lyons Johnson Garcia, P.A**
111 North Orange Avenue, Suite 900
Orlando, Florida 32801
Telephone: (407) 841-4141
Facsimile: (407) 841-4148

*Attorneys for Frenchman's Creek, Inc.*

By: /s/Joseph M. Cobo
Joseph M. Cobo, Esq.
FBN: 114204
Email: jcobo@kdvlaw.com
**KAUFMAN DOLOWICH, LLP**
One Financial Plaza
100 S.E. 3rd Ave., Suite 1500
Fort Lauderdale, FL 33394
Tel. (954) 302-2360
Fax: (888) 464-7982

*Counsel for Leverett House Condominium Association, Inc.*

By: /s/ Stevan J. Pardo
Stevan J. Pardo, Esq.
Florida Bar No. 438626
Linsey M. Lovell, Esq.
Florida Bar No. 121581
**PARDO JACKSON GAINSBURG & SHELOWITZ, PL**
100 Southeast Second Street, Suite 2050
Miami, FL  33131
Phone: 305-358-1001
Fax: 305-358-2001
Email: SPardo@pardojackson.com
          LLovell@pardojackson.com
          CFernandez@pardojackson.com

*Counsel for Ocean Club Community Association, Inc.*

By: /s/Joseph M. Cobo
Joseph M. Cobo, Esq.
FBN: 114204
Email: jcobo@kdvlaw.com
**KAUFMAN DOLOWICH, LLP**
One Financial Plaza
100 S.E. 3rd Ave., Suite 1500
Fort Lauderdale, FL 33394
Tel. (954) 302-2360
Fax: (888) 464-7982

*Counsel for Palm Beach Towers Condominium Association, Inc.*

By: /s/     Jonathan Etra
Jonathan Etra
Florida Bar No. 686905
Samuel Ludington
Florida Bar No. 1031284
**Nelson Mullins Riley & Scarborough, LLP**
One Biscayne Towner, 21st Floor
2 South Biscayne Blvd.
Miami, FL 33131
Telephone: 305.373.9447
Facsimile: 305.995.6449
Jonathan.Etra@nelsonmullins.com
Sam.Ludington@nelsonmullins.com

*Counsel for Wycliffe Golf and Country Club Homeowners Association, Inc.*

By: /s/Joseph M. Cobo
Joseph M. Cobo, Esq.
FBN: 114204
Email: jcobo@kdvlaw.com
**KAUFMAN DOLOWICH, LLP**
One Financial Plaza
100 S.E. 3rd Ave., Suite 1500
Fort Lauderdale, FL 33394
Tel. (954) 302-2360
 Fax: (888) 464-7982

*Counsel for the Township*
*Community Master Association, Inc.*

By:/s/      Jonathan Etra
Jonathan Etra
Florida Bar No. 686905
Samuel Ludington
Florida Bar No. 1031284
**Nelson Mullins Riley & Scarborough, LLP**
One Biscayne Towner, 21st Floor
2 South Biscayne Blvd.
Miami, FL 33131
Telephone: 305.373.9447
Facsimile: 305.995.6449
Jonathan.Etra@nelsonmullins.com
Sam.Ludington@nelsonmullins.com

*Counsel for Old Palm Golf Club, Inc.*

By: /s/ Raymond A. James
Raymond A. James
Florida Bar No. 1026218
Charles W. Prueter
*Admitted Pro Hac Vice*
**FORTIF LAW PARTNERS, LLC**
2021 Morris Avenue, Suite 300
Birmingham, AL 35203
raymond@fortif.com | 205.832.9106
charles@fortif.com | 205.832.9109

*Counsel for Turnberry Towers*
*Condominium Association, Inc.*

By:/s/   Samantha M. Gerencir
Samantha M. Gerencir (FBN 1019553)
Jason P. Mehta (FBN 106110)
**Foley & Lardner LLP**
100 N. Tampa Street, Suite 2700
Tampa, FL 33602
Telephone: (813) 229-2300
Facsimile: (813) 221-4210 jmehta@foley.com
samantha.gerencir@foley.com

*Counsel for Willoughby Golf Club, Inc.*

By: /s/Andrew B. Zelmanowitz
Andrew B. Zelmanowitz, Esq.
Florida Bar No. 74202
Nikki Frances Branch, Esq.
Florida Bar No. 1039430
**BERGER SINGERMAN LLP**
201 East Las Olas Blvd.,
Suite 1500
Fort Lauderdale, FL 33301
Telephone: 954-525-9900
Facsimile: 954-523-2872
 azelman@bergersingerman.com
 nbranch@bergersingerman.com
 DRT@bergersingerman.com
 ltorres@bergersingerman.com
 mavin@bergersingerman.com

*Counsel for Williams Island Property Owners' Association, Inc.*

By: */s/ David C. Borucke*
BARRY A. POSTMAN
Florida Bar No.:  991856
DAVID C. BORUCKE
Florida Bar No.: 039195
JUSTIN C. SOREL
**COLE, SCOTT & KISSANE, P.A.**
Esperante Building
222 Lakeview Avenue, Suite 120
West Palm Beach, Florida 33401
Telephone (561) 383-9234
Facsimile (561) 683-8977
E-mail: barry.postman@csklegal.com
E-mail: david.borucke@csklegal.com
E-mail: justin.sorel@csklegal.com

*Counsel for Anchorage Resort And Yacht Club Condominium Association; Bal Harbour 101 Condominium Association, Inc.; Bocaire Country Club, Inc.; Doral Park Country Club Association; Lake Clarke Gardens Condominium, Inc.; Meadowood Golf & Tennis Club Inc.; Pine Island Ridge Country Club Inc.; Quail Ridge Property Owners Association Inc.; and Yacht & Country Club, Inc.*

By: /s/Adam M. Schachter
ADAM M. SCHACHTER
Florida Bar No. 647101
aschachter@gsgpa.com
DAN S. GELBER
Florida Bar No. 512877
dan@gsgpa.com
Christopher S. Sundby
Florida Bar No. 1026060
csundby@gsgpa.com
**GELBER   SCHACHTER   &
GREENBERG, P.A.**
One Southeast Third Avenue, Suite
2600
Miami, Florida 33131
Telephone. (305) 728-0950

*Counsel   for   Royal   Palm
Improvement Association, Inc.*

By: /s/ Carly Kligler
Carly A. Kligler, Esq.
Fla. Bar. No. 83980
**HILGERS GRABEN PLLC**
1221 Brickell Avenue, Suite 900
Miami, Florida 33131
Tel. 305.630.8304
ckligler@hilgersgraben.com
Paralegals@hilgersgraben.com

*Counsel for Turnberry  Ocean Colony
Master Association, Inc.*

AND

By: /s/ James K. Parker
James K. Parker, Esq.
Fla Bar No. 157526
Dominique G. Brown
Fla Bar No. 1010187
**BOYD RICHARDS PARKER
& COLONNELLI, P.L.**
100 S.E. 2nd Street., Suite 2600
Miami, Florida 33131
(786) 425-1045
jparker@boydlawgroup.com
dbrown@boydlawgroup.com

*Co-counsel  for  Turnberry   Ocean
Colony Master Association, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of  April, 2024, the undersigned electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a Notice of Electronic Filing to all counsel of record.

/s/ William N. Shepherd
William N. Shepherd (Fla. Bar No. 88668)